## Wytheville.

LOCKHART & OTHERS v. VANDYKE.

JULY 6, 1899.

Absent, Riely, J.

1. JOINT-TENANTS—*Survivorship—Death of One Joint-Tenant Before Estate Vests.*—The Virginia statute abolishing survivorship among joint-tenants has no application where the estate in joint-tenancy has not vested, and hence upon the death of one of two joint devisees in the life-time of the testator the whole estate passes to the survivor.

2. LAPSED DEVISES—*Section 2523 of Code.*—Section 2523 of the Code touching lapsed devises is not applicable where, independently of it, no lapse would have occurred.

3. CHANCERY PRACTICE—*Suit by Infant to Vacate a Decree.*—An infant aggrieved by a decree adverse to his interest may sue to set aside the decree either before or after attaining his majority.

4. CHANCERY PRACTICE—*Partition—Suit to Vacate—Deeds Made by Coparceners.*—In a suit to vacate an erroneous partition of land of which the complainant is the owner in fee, it is not error to set aside deeds made by the supposed coparceners of the lands received by them in the partition where the alienees are before the court. The alienees acquired no better title than was vested in their vendors.

Appeal from a decree of the Circuit Court of Tazewell county, pronounced December 13, 1898, in a suit in chancery, wherein the appellee was the complainant, and the appellants were the defendants.

*Affirmed.*

Reese Vandyke died in May, 1889, having first made and published his last will and testament. By the third clause of his

will he declares " I give and bequeath unto my two sons, to-wit: Charles and Henry P. Vandyke, all of the land I now reside on." Charles died in the life-time of the testator " a single man, and without children." · Shortly after the death of the testator, H. H. Lockhart and Jennie, his wife, and Rebecca Vandyke—the said Jennie and Rebecca being daughters of Reese Vandyke, deceased—filed their bill in the Circuit Court of Tazewell county against the widow and the other children of Reese · Vandyke, in which they set out the terms of the will aforesaid, and charge that Charles had died in the life-time of the testator without issue, and that the devise to him had lapsed, and that half of the land was therefore divisible amongst all the heirs of Reese Vandyke, deceased. The bill also charged that the widow had renounced the provision made for her by the will of her husband, Reese Vandyke. The prayer of the bill was for the assignment of dower to the widow, and the partition of the residue of the land. Under proceedings had in this suit dower was assigned to the widow, one-half of the land devised by the third clause of the will was assigned to Henry P. Vandyke, and the remaining half divided equally among all the heirs of Reese Vandyke, deceased. At the time of these proceedings Henry P. Vandyke was an infant.

In December, 1898, Henry P. Vandyke, who was still an infant, suing by his next friend, filed his bill in the Circuit Court of Tazewell county, in which he sets forth the will of his father, and all of the proceedings in the first mentioned suit. He also sets forth the alienations made by his brothers and sisters of the portions of the land assigned to them in the first mentioned suit, and makes the alienees defendants to his bill. He assails the construction placed on his father's will in the first mentioned suit, and states that he is advised that there was no lapse of the devise to his brother Charles, but that the same survived to him, the complainant. He charges that the decrees in the first suit, and the deeds made in pursuance thereof, and the deeds made by his

brothers and sisters of the lands set apart to them in that suit, constitute clouds on his title. He therefore prays for a construction of the will of his father; that all the proceedings in the first mentioned suit, the deeds made in pursuance thereof and the deeds to subsequent alienees be set aside and annulled; that the parties be required to account for rents and profits, and for damages done to the land, and for general relief. All of the other heirs of Reese Vandyke were made parties defendants. The decree was in accordance with the prayer of the bill. From that decree this appeal was allowed.

*Geo. W. St. Clair, Peery & Higginbotham, Henry & Graham,* and *Samuel W. Williams,* for the appellants.

*Chapman & Gillespie* and *Fulton & Coulling,* for the appellee.

KEITH, P., delivered the opinion of the court.

The matters presented for consideration in this record are as follows: Henry P. Vandyke, an infant sixteen years of age, suing by his next friend, filed his bill in the Circuit Court of Tazewell county, in which he avers: That Reese Vandyke died after having made his will, the third clause of which is as follows: " I give and bequeath unto my two sons, to wit, Charles and Henry P. Vandyke, all of the land I now reside on; " that upon the death of the testator, his will was duly probated; that Charles, one of the devisees, died in the lifetime of the testator, and thereupon Lockhart, and Jennie, his wife, and Rebecca Vandyke, filed their bill in the Circuit Court of Tazewell county, in which they claimed that the devise to him lapsed, and a moiety of the lands devised was subject to partition among all the heirs at law of Reese Vandyke, and asked for a partition of them; that the court construed the will in accordance with the claims of the plaintiffs, and held that the legacy to Charles

Vandyke lapsed, and decreed a partition of the real estate, which was accordingly made; that Lockhart and wife conveyed the share assigned to them to James M. McGuire, since deceased; that Rebecca, who has since intermarried with R. L. Yost, conveyed her portion to the Ratliffs, and that Reese T. Vandyke conveyed his share to one Greever, in trust to secure a certain debt.

The bill further avers that the devise being to Charles and plaintiff jointly, and Charles having died in the lifetime of the testator, the devise to him did not lapse, but that the whole of it vested in the plaintiff and now belongs to him, and that the decrees in said suit for partition are erroneous; that the plaintiff is entitled to have the will construed; that the decrees in the former suit are not binding upon him, but should be set aside and vacated; that the deeds made by the partitioners are clouds upon his title, which he prays may be removed, and an account directed of the rents, issues, and profits of the land, the possession of which has been withheld from him. The other heirs at law of the testator were made parties defendant. The Circuit Court, decreeing in favor of the plaintiff, held that, by a true construction of the will, the share of Charles Vandyke did not lapse, but, upon the death of the testator, passed to, and vested in, Henry P. Vandyke, annulled the several conveyances before mentioned, and directed certain inquiries which need not be specifically mentioned. The case is before us upon an appeal from that decree.

We are of opinion that Charles and Henry P. Vandyke would have been joint tenants of the lands devised to them had they survived the testator.

In 2 Minor's Insts., at page 467, it is said: " A joint tenancy arises by act of the parties, and never by act of law. It may be created by the devise, or by any conveyance *inter vivos*, by words which give an estate to a plurality of persons, without adding any restrictive, exclusive, or explanatory words. Thus,

if an estate be granted to A and B and their heirs, this makes them joint-tenants in fee of the lands. For the law interprets the grant so as to make all parts of it take effect, which can only be done by creating an equal estate in them both.   *  *  * Formerly, joint-tenancy was much favored; but for more than a century past the courts have laid hold of every available expression to construe estates given to a plurality of tenants as tenancies in common. And although this innovation began in equity, and in reference to wills, yet it has long prevailed in the courts of common law as well, and the doctrine extends to deeds as uniformly as to wills. Hence, such expressions as ' equally to be divided,' ' share and share alike,' ' respectively between and amongst them,' will, according to this modern construction, convert into a tenancy in common what would once have been a joint-tenancy." See, also, *Morley* v. *Bird*, 3 Vesey, 628, and *Whitmore* v. *Trelawny*, 6 Vesey 128.

In the clause under consideration there are no words of severance, nor any "restrictive, exclusive, or explanatory words," such as, if employed, would have served to create a tenancy in common under the rules of modern construction.

In 2 Minor, at page 1049, it is said: " The general doctrine at common law is that a devise lapses in all cases where the devisee dies before the testator. And if the devise be to several, as tenants in common, and one of them dies in the testator's lifetime, his share lapses. Where, however, the devise is to several jointly, and one of them dies in the testator's lifetime, his share does not lapse, but survives; for although such joint devisees are not joint-tenants until the testator's death, yet the gift to them is a gift *per mie et per tout,* and so, if one should die, whereby, as he has nothing separately, his interest ceases to exist, the other or others are entitled to the whole as at first, but with no one to share it with them. And as the parties have not become joint tenants, the statute abolishing survivorship does not apply."

The law touching the lapse of devises is to be found in sec-
tion 2523 of the Code, and is as follows: " If a devisee or legatee
die before the testator, leaving issue who survive the testator,
such issue shall take the estate devised or bequeathed, as the
devisee or legatee would have done if he had survived the testa-
tor, unless a different disposition thereof be made or required
by the will; " but, as is justly observed by Mr. Minor, this
statute is not applicable where independently of it no lapse
could occur, and therefore cannot be invoked in a case such as
this, " for by the force and effect of the joint-taking, the share
of the party deceased would survive to the survivor or sur-
vivors." 2 Minor, *supra.* See, also, *Pendleton* v. *Hoomes,*
Wythe's Reports, p. 94. The law of the subject under consider-
ation is discussed with a great wealth of learning by Mr. William
Green in an appendix to the volume just cited, which is quoted
in terms of high and deserved approbation in Freeman on Co-
Tenancy and Partition, secs. 28 and 40. He reaches the con-
clusion arrived at by Mr. Minor, and shows that the common
law doctrine is still the law, notwithstanding our statute which
abolishes the survivorship among joint-tenants. With respect
to that statute, he observes that, while it does away with the
right of survivorship, it does not destroy joint-tenancy. To use
his own language: " It does not annihilate the legal entity called
a joint estate, so as to prevent any such estate from vesting, nor
does it destroy the joint estate forthwith after it has vested. On
the contrary, it permits the estate to subsist as joint, with all its
former incidents, during the joint lives of all its owners; and
if, in that time, partition be made, or a severance effected with-
out partition, it is quiescent as a dead-letter. It begins to operate
at all, only when one of the joint-tenants has died before par-
tition or severance. And on the happening of that event, and
from thenceforth, it directs that the part of the deceased shall
be considered as if *he* had been a tenant in common, not from
the beginning, but only when the event to which it refers hap-

pened. Where it applies, and to the extent of its application, it operates, *in articulo mortis*, a statutory severance; and that is all. It does not extirpate the quality of a joint estate, which made it produce, among other fruits, the *jus accrescendi*, but only destroys in the moment of production, or blights by anticipation in the bloom, that particular fruit. In this manner it modifies the nature of a joint-tenancy by the common law, so far as to take away one of the incidents which the law has annexed to it, but leaves it in all other respects as it was. In short, since the statute, joint-tenants seem to have an estate that is to all purposes joint, both in its inception and also in its continuance, until a destruction or severance thereof takes place; which latter, where an interest has become vested, is effectuated by the statute at the moment any of them dies, to the extent of his part; and henceforth that part is to be regarded as it would have been (though the statute had never been enacted) if the joint estate had been to the same extent dissevered by any of the means which theretofore existed. And, if this be the sum of its efficacy, the consequence seems to be, that in regard to the lapsing of devises and legacies, and also in regard to the vesting of estates created or transferred by conveyances *inter vivos*, it has been productive of no change whatever."

He shows that in a case like that under discussion the doctrine of survivorship has no place, as it applies only where the estate in joint-tenancy has been created and has vested; and, therefore, the abolition of the doctrine of survivorship does not affect the common law rule with respect to the death of one or more devisees during the lifetime of the testator, for it is still true, notwithstanding the statute, " that each joint-tenant takes conjointly with the rest the entire estate—separately nothing," from which it follows that " if one should die, whereby, as he has nothing separately, his interest ceases to exist, the other or others are entitled to the whole as at first, but with no one to share it with them." 2 Minor, 1049.

This subject was considered by the Supreme Court of West Virginia in the case of *Hoke* v. *Hoke*, 12 W. Va. 427, and a decision rendered in accordance with the views of the text writers above quoted. See, also, 2 Redfield on Wills, 169; 3 Lomax Digest, 185; 2 Williams on Executors (with Perkins' notes), p. 1311; 2 Jarman on Wills, 265.

The authorities cited seem to be conclusive of the correctness of the decree appealed from upon the points thus far considered.

This suit was brought by the infant through his next friend before he had attained the age of twenty-one years, in order to set aside a decree adverse to him which had been rendered in a proceeding, which he sets out in his bill; and it is claimed by appellants that it was prematurely instituted, and that the plaintiff should have waited until he had attained the age of twenty-one years. This question has been considered and disposed of by this court in *Harrison* v. *Wallton*, 95 Va. 721.

Further objection is made to the decree complained of, because it sets aside conveyances made to the alienees of certain defendants. Those alienees took only such title as was in their grantors. They took with full notice of the proceedings in the original partition suit. They were not purchasers from the court in a judicial proceeding, but purchased from the coparceners the shares which had been allotted to them, and the titles which they acquired were subordinate to the rights of the infant under the will of Reese Vandyke.

Upon the whole case, we are of opinion that there is no error in the decree complained of, and it must be affirmed.

*Affirmed.*